## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC L. TAYLOR,** | : | **CIVIL ACTION NO. 1:23-CV-882** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LAUREL HARRY**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, Eric L. Taylor, a prisoner incarcerated in Phoenix State Correctional Institution ("SCI-Phoenix") who was incarcerated in Huntingdon State Correctional Institution ("SCI-Huntingdon") at all relevant times, alleges various civil rights violations arising from an incident in which he was charged with and convicted of misconduct for allegedly attempting to bring drugs into the prison.  Defendants have filed a motion to dismiss.  The motion will be granted, Taylor's complaint will be dismissed, and Taylor will be granted leave to amend with respect to his retaliation, access to courts, and conditions of confinement claims.

### I.   <u>Factual Background & Procedural History</u>

Taylor filed his complaint on May 21, 2023, and the court received and docketed it on May 30, 2023.  (Doc. 1).  According to the complaint, Taylor was transferred to SCI-Huntingdon's restricted housing unit ("RHU") on March 13, 2023, pending an investigation into a possible violation of prison disciplinary rules.  (<u>Id.</u> at 8).  When an inmate is placed in the RHU, the complaint avers that he is

ordinarily interviewed by the prison's Program Review Committee ("PRC") every week to determine whether continued placement in the RHU is appropriate. (Id.) The complaint alleges that Taylor was not interviewed by the PRC following his transfer to the RHU. (Id.)

On March 27, 2023, Taylor was escorted from his cell by defendants Campbell and Eberling, who were both working as correctional officers in the prison. (Id. at 8-9). Campbell and Eberling informed Taylor that he was being investigated for allegations that he was seeking to introduce drugs into the prison through the legal mail system. (Id. at 9). The complaint alleges that before this conversation no drugs had ever been confiscated from Taylor, nor had he tested positive for drugs. (Id.)

On March 28, 2023, Taylor was served with a misconduct citation charging him with possession of drugs, gambling, and unauthorized use of a phone. (Id.) Later that day, Taylor submitted a formal written request for representation during disciplinary proceedings and a request for defendant Campbell to testify as a witness. (Id.) The complaint alleges that Campbell could have testified to facts that would support the veracity of Taylor's testimony. (Id.) Campbell purportedly told Taylor, however, that he refused to testify because he would not "side with" Taylor against SCI-Huntingdon's security team. (Id.)

On March 31, 2023, Taylor was transported to a disciplinary hearing conducted by defendant Ellenberger, a disciplinary hearing officer. (Id.) Campbell was not present. (Id.) Taylor objected to Campbell not being called as a witness, but Ellenberger purportedly overruled the objection and proceeded with the hearing. (Id.) The complaint avers that Campbell's failure to testify prejudiced

Taylor because Campbell could have provided evidence that Taylor had been seeking an extension of time from the state court presiding over his criminal case in the weeks before his placement in the RHU, which would have supported Taylor's account that he was not using the mail system for an improper purpose. (Id.) Taylor attempted to introduce this evidence without the aid of Campbell's testimony, but Ellenberger purportedly stated that it "did not matter." (Id. at 9-10). After a brief continuance, the disciplinary hearing reconvened on April 3, 2023, at which point Ellenberger found Taylor guilty of the misconduct charges and sentenced him to the maximum allowable sentence—90 days in the RHU and 180 days of "loss of privilege"—allegedly in retaliation for Taylor's refusal to plead guilty to all the charges.[1] (Id. at 10-11).

On March 21, 2023, Taylor was allegedly exercising in the cage provided for outdoor recreation for inmates in the RHU when another inmate threw feces at him. (Id. at 12). On March 22, 2023, Taylor filed a grievance regarding his continued placement in the unit without being interviewed by the PRC. (Id. at 10). Defendant Rivello—the prison's superintendent—denied the grievance on March 31, 2023, stating that the PRC reviewed Taylor's RHU placement on March 15, 2023, March 22, 2023, and March 29, 2023. (Id.) The complaint asserts that this information was false, that the PRC did not interview Taylor on those dates, and that review of relevant surveillance footage in the RHU would show this. (Id.)

---

[1] It appears from the allegations in the complaint that Taylor pleaded not guilty to the drug charge but pleaded guilty to the other charges. (See id.)

Taylor filed an appeal of Ellenberger's ruling on April 3, 2023. (Id. at 11). Rivello ultimately denied the appeal on April 19, 2023. (Id.) Rivello's decision allegedly failed to consider Taylor's allegations of due process violations during the hearing. (Id.) Taylor filed an appeal to the DOC's chief hearing examiner, defendant Moslak, on April 27, 2023. (Id. at 12). The appeal was ultimately denied, purportedly in an untimely fashion, on May 19, 2023. (Id. at 13-14).

On May 7, 2023, at approximately 5:30 p.m., a power outage allegedly occurred in the RHU, causing there to be no air circulation or running water in Taylor's cell. (Id. at 12). The lack of running water purportedly caused problems for Taylor, who must frequently use the bathroom because he suffers from Crohn's Disease. (Id.) The complaint avers that correctional officers in the RHU kept inmates locked in their cells during the power outage and did not provide any drinking water to them. (Id.)

Another power outage allegedly occurred the next day, May 8, 2023, which lasted from approximately 10:57 a.m. to 12:34 p.m. (Id. at 12). Prison officials allegedly again ordered inmates to remain in their cells and did not provide drinking water. (Id.) Taylor was allegedly unable to refrain from moving his bowels during this power outage, resulting in a "foul lingering odor" in his cell from his feces in the toilet. (Id.) Taylor was also unable to wash his hands after moving his bowels due to the lack of running water. (Id.)

On May 9, 2023, a power outage occurred for the third consecutive day in the RHU, lasting from approximately 1:58 p.m. to 2:39 p.m. (Id.) The correctional

officers again directed inmates to remain in their cells and did not provide drinking water.  (Id.)  Taylor became hot and dizzy from the lack of air circulation.  (Id.)

The complaint asserts seven claims for relief: (1) a claim for retaliation in violation of the First Amendment against Campbell, Ellenberger, Rivello, Moslak, Eberling, and Corley; (2) a claim for violation of Taylor's right of access to the courts in violation of the First Amendment against Moslak; (3) a claim alleging an excessive disciplinary charge and sentence in violation of the Eighth Amendment against Corley, Eberling, Jenkins, Ellenberger, Rivello, and Moslak; (4) a claim that Taylor was subjected to unconstitutional conditions of confinement in violation of the Eighth Amendment when another inmate threw feces at him against Campbell, Wendle, and Rivello; (5) a claim that Taylor was subjected to unconstitutional conditions of confinement when he was subjected to power outages in the RHU against Rivello and Harry; (6) a claim that Corley, Campbell, Eberling, Ellenberger, Jenkins, Rivello, and Moslak violated Taylor's Fourteenth Amendment right to due process during the disciplinary proceedings and resulting appeals; and (7) a claim that Wendle, Campbell, Rivello, and Moslak violated Taylor's right to due process by failing to afford him interviews with the PRC during his RHU confinement in violation of DOC policy.  (Id. at 16-20).  Taylor seeks damages, declaratory relief, and injunctive relief.  (Id. at 22).

We directed the Clerk of Court to serve all defendants with a copy of the complaint on July 26, 2023.  (Doc. 14).  Defendants filed the instant motion to

dismiss on September 25, 2023.  (Doc. 19).[2]  Briefing on the motion to dismiss is complete and it is ripe for review.  (Docs. 20, 30).

## II. __Legal Standard__

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly,

---

[2] After defendants moved to dismiss, Taylor filed two amended complaints without previously seeking leave of the court or defendants' concurrence as required by Federal Rule of Civil Procedure 15.  (Docs. 21, 25).  The court struck these amended complaints for their noncompliance with Rule 15.  (Docs. 22, 27). Taylor's original complaint accordingly remains the operative pleading in this case.

550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants.  Sause v. Bauer, 585 U.S. 957, 960 (2018).  *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**III.   Discussion**

Taylor brings his constitutional claims under 42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights but serves as a mechanism for vindicating rights otherwise protected by federal law.

See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  We will analyze Taylor's Section 1983 civil rights claims *seriatim*.

### A.      Retaliation

To state a claim for retaliation in violation of the First Amendment, a plaintiff must allege that (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  Causation may be pleaded by alleging either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing.  Dondero v. Lower Milford Twp., 5 F.4th 355, 361-62 (3d Cir. 2021) (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).  Causation may also be implied by "the record as a whole."  Id. (citing DeFlaminis, 480 F.3d at 267).

Taylor's retaliation claim is based on several allegedly retaliatory actions by defendants—namely (1) Campbell's refusal to testify in Taylor's misconduct hearing; (2) Ellenberger's imposition of the maximum allowable sentence for Taylor's misconduct; (3) Rivello and Moslak denying Taylor's appeals; and (4)

Rivello, Campbell, Eberling, and Corley informing Taylor that he was going to be transferred to another prison.  (<u>See</u> Doc. 1 at 16).

None of Taylor's allegations are sufficient to state a retaliation claim upon which relief may be granted.  Assuming Taylor has adequately alleged protected conduct and actions by defendants that could deter a person of ordinary firmness from exercising his constitutional rights, he has failed to allege any facts from which it could be inferred that these actions were done in retaliation for Taylor's protected conduct.   The only basis to infer causation from the complaint is the temporal proximity between Taylor's actions and the defendants' actions, but in the context of this case, that temporal proximity is not unusually suggestive of a retaliatory motive.  The allegedly retaliatory actions by Campbell, Ellenberger, Rivello, and Moslak were decisions that needed to be made during the course of Taylor's disciplinary proceedings—i.e., whether to testify, how to sentence him, and how to rule on his appeals.  The fact that they occurred shortly after Taylor's allegedly protected conduct is simply a byproduct of the fact that all parties were involved in the disciplinary proceedings and is not by itself suggestive of a retaliatory motive. There is also no basis to infer an unusually suggestive temporal proximity with respect to the transfer because it is unclear from the complaint when the transfer occurred.  Hence Taylor's retaliation claim will be dismissed for failure to state a claim upon which relief may be granted.

### B.    Access to Courts

Prima facie claims of denial of access to courts require allegations that (1) prison officials impeded plaintiff's access to courts and (2) plaintiff suffered actual

injury in his ability to access the courts. Lewis v. Casey, 518 U.S. 343, 351 (1996);
Rivera v. Monko, 37 F.4th 909, 915 (2022). To allege actual injury, the plaintiff must
allege that he lost an opportunity to pursue a nonfrivolous or arguable underlying
claim and that there is no other available remedy for the lost claim. Rivera, 37 F.4th
at 915 (citing Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008)).

Taylor's access to courts claim alleges that defendant Moslak violated his
right of access to the courts by failing to timely respond to his administrative appeal
because Taylor must exhaust administrative remedies before he may file suit. (Doc.
1). This claim will be dismissed. Taylor has not alleged any actual injury to his
access to the courts. Taylor was able to timely file the complaint that initiated this
case, and the court cannot discern any other injuries to Taylor's access to the courts
caused by Moslak's actions.

> C.     **Due Process**

Taylor asserts that defendants violated his rights to procedural due process
during the disciplinary hearing conducted by Ellenberger and during his resulting
appeals. This claim fails as a matter of law. Prison disciplinary proceedings only
trigger due process protections when the sanction imposed on the prisoner plaintiff
constitutes an "atypical and significant hardship on the inmate in relation to the
ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The
sanctions imposed on Taylor—90 days in the RHU and 180 days' "loss of
privilege"—do not impose an atypical and significant hardship on Taylor. See
Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) ("Under Sandin, an

administrative sentence of disciplinary confinement, by itself, is not sufficient to create a liberty interest.").

Taylor additionally claims that his right to due process was violated when he was not interviewed by the PRC as required by DOC policy.  This claim similarly fails as a matter of law.  Violation of DOC policy does not by itself establish a violation of due process.  Griffin v. Vaughn, 112 F.3d 703, 708-09 & n.3 (3d Cir. 1997).

### D.    Excessive Discipline

Taylor's excessive discipline claim alleges that defendants Corley, Eberling, Jenkins, Ellenberger, Rivello, and Moslak violated the Eighth Amendment by imposing disciplinary charges and a disciplinary sentence that were excessive in light of the charged conduct.  (Doc. 1 at 17).  This claim fails as a matter of law.  Prison disciplinary sanctions may be deemed excessive under the Eighth Amendment only if they impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007) (nonprecedential) (citing Sandin, 515 U.S. at 484);[3] accord Banks v. Thompson, No. 1:21-CV-777, 2022 WL 108611, at *4 (M.D. Pa. Jan. 11, 2022) (Conner, J.).  As discussed above, the disciplinary proceedings at issue in this case did not constitute an atypical and significant hardship under Sandin.  The court will accordingly dismiss Taylor's Eighth Amendment excessive discipline claim.

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

### E.     Conditions of Confinement

To state an Eighth Amendment conditions of confinement claim, plaintiffs must allege (1) that they were subjected to an objectively, sufficiently serious deprivation that resulted in the denial of minimal civilized measures of life's necessities and (2) that defendant prison officials were deliberately indifferent to inmate health or safety.  Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The defendant is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." Id. (quoting Farmer, 511 U.S. at 837).  An evaluation of the context of the claim is necessary.  "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone. . . ."  Id. at 304.

Taylor advances two conditions of confinement claims: one based on the power outages that occurred on three consecutive days and caused temporary deprivation of air circulation and running water, the other based on the incident in which another inmate allegedly threw feces at Taylor.  (Doc. 1 at 18).  Taylor's claim based on the alleged power outages fails because the deprivation of running water and air circulation for several hours on three separate occasions is not a sufficiently serious deprivation to violate the Eighth Amendment.  See, e.g., Burgos v. Canino, 358 F. App'x 302, 308 (3d Cir. 2009) (nonprecedential) (holding that "limited deprivation of water and sanitary conditions after a flood at the prison" did not violate plaintiff's Eighth Amendment rights); Curry v. McCann, No. 18-CV-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) (collecting cases for proposition that

deprivation of toilet and running water for short period of time does not violate the Eighth Amendment).

Taylor's claim arising from another inmate allegedly throwing feces at him will also be dismissed because he has not alleged the personal involvement of any defendants.  See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018) (noting that a defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation).  There are no allegations in the complaint that any defendants directed the inmate to throw feces at Taylor, that they failed to appropriately respond when the feces were thrown at Taylor, or that they were personally involved in any other way.

### F.  Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, district courts must permit a curative amendment unless the amendment would be inequitable or futile.  Phillips, 515 F.3d at 245.  We will deny leave to amend as futile with respect to Taylor's due process and excessive discipline claims because those claims fail as a matter of law.  We will grant leave to amend, however, with respect to Taylor's access to courts, conditions of confinement, and retaliation claims because those claims are factually, rather than legally, deficient.

**IV.**    **Conclusion**

We will grant defendants' motion to dismiss, dismiss Taylor's complaint, and grant him leave to file an amended complaint with respect to his retaliation, access to courts, and conditions of confinement claims.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    June 13, 2024